Lane SWAINSTON, Lori Swainston, and Lane Swainston as guardian ad litem for Zachary Swainston, a minor, Plaintiffs,

v.

INTERMOUNTAIN HEALTH CARE, INC., et al., Defendants and Appellants.

Howard, Lewis & Peterson, Real Party in Interest and Appellee.

Nos. 870312, 870319.

Supreme Court of Utah.

Dec. 13, 1988.

Dan S. Bushnell, Charles W. Dahlquist, Merrill F. Nelson, Salt Lake City, for defendants and appellants.

Jackson Howard, Provo, for plaintiffs.

Glenn C. Hanni, Salt Lake City, for appellee.

DURHAM, Justice:

Intermountain Health Care (IHC) appeal from the trial court's order denying its motion to disqualify the firm of Howard, Lewis & Petersen (the Howard firm) from the present action. Following a hearing on the motion, the trial court ruled that IHC was collaterally estopped from litigating its motion because a similar motion had previously been litigated in a case in federal court. We reverse and remand.

Plaintiffs filed the present medical malpractice action on March 9, 1984. The Howard firm appeared as counsel on June 25, 1984, after plaintiffs' original counsel withdrew from the case. At that time, the Howard firm was representing other clients in several different actions pending against IHC.

*Wilson v. Intermountain Health Care Corp.*, No. 69908 (4th Dist.Ct. Utah June

14, 1985), an unrelated action, was pending against IHC when the Howard firm was hired by the plaintiffs in this case. IHC was represented in *Wilson* by the California law firm of Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey (Finley, Kumble). On July 11, 1985, Peter C. Rosenbloom, of Finley, Kumble, telephoned Richard B. Johnson of the Howard firm. Rosenbloom introduced himself and explained that he needed local counsel to file a motion to allow three Finley, Kumble attorneys to litigate the case in the Utah courts. The local firm would also be asked to conform documents written by Finley, Kumble attorneys to local rules of practice. According to Johnson, he told Rosenbloom that the Howard firm represented clients in other actions against IHC. Rosenbloom stated that he foresaw no conflict of interest due to the nature of the *Wilson* case, but that he would discuss the potential problem with his superiors and the client; Johnson was told that if there were no problems, he would receive the *Wilson* materials the following day.

Johnson received the materials for the *Wilson* case the next day and thereby became local counsel for IHC in *Wilson.* Johnson then filed a motion to permit temporary admission of the California attorneys to the Utah bar to litigate the *Wilson* case. He also reviewed several documents and supporting memoranda and conformed them to local rules of practice. Johnson billed Rosenbloom $127.50 in fees and $68.32 in costs.

Johnson did not solicit any additional information from IHC, nor did he receive any information from IHC's offices or general counsel. According to Johnson, the Howard firm never received confidential information about IHC from anyone; Johnson did theoretically have access to confidential information about IHC, but actual information was never sought.

When IHC learned of the representation, it asked the Howard firm to withdraw as local counsel in *Wilson,* and on January 16, 1986, the Howard firm did so. IHC then filed motions to disqualify the Howard firm as counsel in the other actions pending against IHC at the time the Howard firm represented IHC in *Wilson,* including this case.[1]

In *Bodily v. Intermountain Health Care Corp.,* 649 F.Supp. 468 (D.Utah 1986), the federal district court ruled on IHC's motion to disqualify and found that the Howard firm had violated Canon 5 of the Utah Code of Professional Responsibility. *Id.* at 476. However, the court also found that "the conduct of the Howard firm does not so undermine the court's confidence in the firm's vigor and ability to represent Bodily as to warrant disqualification." *Id.* at 478. Finally, the court held, "After weighing all of the facts and circumstances of this case, this court concludes that disqualification is not merited in this instance." *Id.* at 479.

In the present action, both parties stipulated to the trial court's adoption of the *Bodily* transcript and record. In addition to the *Bodily* record, the trial court in this action received memoranda and heard argument on IHC's disqualification motion. The trial court order held that IHC was collaterally estopped from raising the same issue decided by the federal court in *Bodily* and declined to consider the merits of the motion.

On appeal, IHC claims that the state court was not bound by the federal court's ruling on the disqualification motion because the federal court decision relied on federal, not state, law. IHC also argues that if this Court reaches the merits of the motion, the case of *Margulies v. Upchurch,* 696 P.2d 1195 (Utah 1985), establishes a per se rule of disqualification; therefore, the Howard firm should be disqualified because it had access to confidential information about IHC. IHC further contends that under *Margulies,* the failure to comply with Canon 5 may not be cured by withdrawal of the Howard firm from the *Wilson* case.

---

**1.** All of the facts summarized to this point were before the trial court in the form of a stipulation to the contents of the record and the opinion by Judge Greene in *Bodily v. I.H.C. Corp.,* 649 F.Supp. 468 (D.Utah 1986).

Plaintiffs argue first that IHC is collaterally estopped from relitigating an issue decided by the federal court in *Bodily* and, second, that even if collateral estoppel does not apply, the facts here do not warrant disqualification. Because the federal court relief on *Margulies* in *Bodily*, plaintiffs contend, federal law is the same as state law.

■ There are two branches of res judicata, claim preclusion and issue preclusion. *Noble v. Noble*, 761 P.2d 1369 (Utah 1988). We first consider whether this appeal involves a claim or an issue. An issue may be described as a "certain and material point, affirmed by one party and denied by the other." *Donahue v. Susquehanna Collieries Co.*, 138 F.2d 3, 4 (3d Cir.1943). A court resolves an issue by making a finding of fact or a ruling on a matter of law. No relief is inherent in the resolution of an issue. A claim or cause of action is "the aggregate of operative facts which give rise to a right enforceable in the courts." *Original Ballet Russe v. Ballet Theatre*, 133 F.2d 187, 189 (2d Cir.1943). A claim is the "situation or state of facts which entitles a party to sustain an action and gives him the right to seek judicial interference in his behalf." *Rhodes v. Jones*, 351 F.2d 884, 886 (8th Cir.1965). A claim petitions the court to award a remedy for injury suffered by the plaintiff. A cause of action is necessarily comprised of specific elements which must be proven before relief is granted. A claim or cause of action is resolved by a judicial pronouncement providing or denying the requested remedy.

A motion for disqualification is not clearly either a claim or an issue; it is a request for equitable relief which occurs during litigation of a claim, but it lacks the elements and indicia of a claim or cause of action. Because a disqualification motion has no meaning unless it is pendent to a claim, it more closely resembles an issue resolved during the course of the litigation. By analogy, therefore, we will analyze the motion as an issue under this Court's established issue preclusion test:

1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?

2. Was there a final judgment on the merits?

3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

4. ... Was the issue in the first case competently, fully, and fairly litigated? *Madsen v. Borthick*, —— P.2d ——, No. 19704, —— Utah Adv.Rep. —— (filed December 12, 1988); *Searle Bros. v. Searle*, 588 P.2d 689, 691 (Utah 1978); *see also White Pine Ranches v. Osguthorpe*, 731 P.2d 1076 (Utah 1986); *Schaer v. State ex rel. Utah Dep't of Transp.*, 657 P.2d 1337 (Utah 1983).

The question to be examined under the first step of the test is whether the disqualification motion adjudicated in *Bodily* is identical to the motion in the present case. We must determine "whether the issues actually litigated in the first action are precisely the same as those raised in the instant action." *Wilde v. Mid–Century Ins. Co.*, 635 P.2d 417, 419 (Utah 1981); *see also Schaer*, 657 P.2d at 1341.

■ In *Bodily*, the relevant question was whether the outcome of the case would be affected by the Howard firm's involvement in *Wilson*. In the present action, the relevant question is whether *the present action* has been affected or prejudiced by the Howard firm's involvement in *Wilson*. The questions are not necessarily identical. There may be facts in *Wilson* which were not relevant to *Bodily* but are important in the present action. The *Bodily* court's ruling on the disqualification motion decided that the relevant facts from *Wilson* did not affect the *Bodily* litigation significantly. However, the scope of the *Bodily* court's inquiry was not large enough to determine that the Howard firm's involvement in *Wilson* would not adversely impact other cases. The first part of our test for issue preclusion is thus not satisfied. The trial court must hold an independent hearing on the disqualification motion in this case and may not rely on the ruling of the federal district court. The parties may stipulate to

the incorporation by reference of the *Bodily* record and transcript into the present action, but the state trial court must make its own assessment of the evidence and the law and rule accordingly.[2]

We also note that the state courts must exercise supervisory power over their own proceedings and are "usually given broad discretion in controlling the conduct of attorneys in matters before the court." *Margulies,* 696 P.2d at 1199; *see also Redd v. Shell Oil Co.,* 518 F.2d 311, 314 (10th Cir.1975); *Waters v. Western Co. of North America,* 436 F.2d 1072, 1073 (10th Cir. 1971). Because of the discretionary nature of these supervisory powers, the state court should review the disqualification motion independently and should not rely on a federal court's ruling as a matter of policy, where res judicata does not require deference.

Because the trial court has not yet reached the merits of the disqualification motion, we do not treat the parties' arguments going to the merits, leaving them for resolution on remand.

The order of the trial court is therefore reversed, and the case is remanded for further hearings consistent with this opinion.

HALL, C.J., and STEWART and ZIMMERMAN, JJ., concur.

HOWE, Associate C.J., concurs in the result.

---

**2.** Although we have declined in this opinion to reach the merits of the disqualification issue, our remand necessarily implies that disqualification is not automatic under *Margulies,* contrary to the arguments advanced by IHC.